UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID A. TERKAY,                    :
                                    :
        Plaintiff,                  :CIVIL ACTION NO. 3:04-CV-1023
                                    :
            v.                      :(JUDGE CONABOY)
                                    :(Magistrate Judge Mannion)
JO ANNE B. BARNHART,                :
Commissioner of Social              :
Security,                           :
                                    :
        Defendant.                  :

_____

## MEMORANDUM AND ORDER

In this Memorandum we consider Magistrate Judge Malachy E. Mannion's Report and Recommendation, (Doc. 12), regarding Plaintiff's appeal of the denial of his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.  The Magistrate Judge recommends that Plaintiff's Appeal be denied.  (Doc. 12 at 23.)  Because Plaintiff has filed objections to the recommended disposition, (Doc. 13), we will make a de novo determination regarding the matters to which Plaintiff has objected.  See 28 U.S.C. § 636(b)(1)(C).

After a thorough examination of the record, we concur with the Magistrate Judge's conclusion and therefore adopt his Report and Recommendation and deny Plaintiff's appeal.

## I. Background

On May 10, 2004, Plaintiff filed his appeal of the

1

Commissioner's final decision denying him DIB under Title VII of the Social Security Act, 42 U.S.C. §§ 401-433.  (Doc. 1.)  He filed his application for DIB on January 7, 2003, alleging that he became disabled on March 12, 2002, due to degenerative disc disease, bilateral carpal tunnel syndrome and severe depression.  (R. at 21, 121, 146.)

Plaintiff's claim was denied initially, (R. at 102-107), and a hearing was held before an Administrative Law Judge ("ALJ") on October 6, 2003, (R. at 42-101).  Plaintiff was represented by counsel at the hearing.[1]  (R. at 42.)  In addition to Plaintiff, Paul Lee Orr, M.D., a medical expert, and George Starosta, a vocational expert, testified at the hearing.  (Id.)

On December 10, 2003, the ALJ issued a decision in which he determined that Plaintiff was not entitled to DIB.  (R. at 29.) Represented by different counsel, Plaintiff filed a request for review of the ALJ's decision, (R. at 16), which the Appeals Council denied on April 9, 2004, (R. at 11).  On May 26, 2004, the Appeals Council set aside its action of April 9, 2004, and considered additional information.  (R. at 6.)  After considering the additional medical information, the Appeals Council again denied Plaintiff's request for review.  (Id.)  Therefore, the ALJ's decision become the final decision of the Commissioner.

Plaintiff filed his appeal in this Court on May 10, 2004.

---

[1]  Different counsel represents Plaintiff for this appeal.

2

(Doc. 1.)  The matter was referred to Magistrate Judge Mannion who issued his Report and Recommendation on March 14, 2005, in which he recommends the Court deny Plaintiff's appeal.  (Doc. 12.) Plaintiff filed objections on March 31, 2005, (Doc. 13), and Defendant responded to Plaintiff's objections on April 12, 2005, (Doc. 14).

Plaintiff objects to the Magistrate Judge's Report and Recommendation on three grounds.  (Doc. 13 at 7-8.)  First, Plaintiff maintains the Magistrate Judge erred in discounting the treating physicians' opinions.  (Id. at 7.)  Second, Plaintiff avers the Magistrate Judge did not properly consider Plaintiff's testimony regarding his usual daily activities.  (Id. at 8.) Finally, Plaintiff contends the Magistrate Judge did not properly consider his work history.  (Id.)

## II.  Disability Determination

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2]  It is necessary for the

---

[2]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. § 416.920(a)-(f); see Sullivan v. Zebley, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  Mason v. Shalala, 993 F.2d 1058, 1064 (3d Cir. 1993).

In this case, the ALJ made the following "Findings of Fact and Conclusions of Law":

---

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

4

1.   The claimant met the disability insured
     status requirements under the Act as of
     March 12, 2002, the alleged onset date
     of disability, and continues to meet
     those requirements potentially through
     December 31, 2007.

2.   The claimant has not been employed nor
     engaged in substantial gainful activity
     subsequent to his alleged onset date of
     disability.

3.   The medical evidence of record
     establishes that the claimant has
     degenerative disc disease, depression, a
     right shoulder injury, and a history of
     carpal tunnel syndrome and prescription
     medication abuse.  These impairments,
     when considered in combination are
     severe.

4.   The claimant does not have an
     impairment, or combination of
     impairments, severe enough to meet or
     equal the requirements of any of the
     Listing of Impairments set forth in
     Appendix 1, Subpart P, Social Security
     Administration Regulations No. 4.

5.   The claimant's allegations regarding his
     limitations were not totally credible
     for the reasons set forth in the body of
     the decision.

6.   Having been born on February 8, 1957,
     the claimant is a 46 year old younger
     individual, with a post high school
     education, and past relevant work which
     ranged from semi-skilled to skilled in
     nature and medium to heavy in exertional
     level.  Transferability of work skills
     was not an issue in the case.

7.   The claimant has the residual functional
     capacity to lift ten pounds occasionally
     and five pounds more frequently, sit for
     six hours in an eight hour workday and
     stand/walk for six hours.  Because of

his low back pain, he needs to avoid
repetitive bending and twisting of the
body, and due to his history of
bilateral carpal tunnel syndrome, he
cannot use his hands for repetitive type
of work or forceful gripping.  He cannot
do any heavy overhead work and because
of his depression, he is limited to jobs
that involve low to moderate levels of
concentration.

8.   The claimant does not have the residual
     functional capacity to perform any of
     his past relevant work.

9.   There are jobs which exist in
     significant numbers in the national
     economy which the claimant can perform
     consistent with his medically
     determinable impairments, functional
     limitations, age, education and work
     experience.

10.  The claimant is not disabled under the
     framework of Medical-Vocational Rule
     201.21.

11.  The claimant has not been under a
     "disability," as defined in the Social
     Security Act, at any time since his
     alleged onset date of March 12, 2002.

(R. at 28-29.)

### III. Evidence of Record

The Magistrate Judge set out the following "Evidence of

Record," (Doc. 12 at 5):

The plaintiff was born on February 8,
1957.  (TR. 28, 121 and 146).  He has a
college education and his past relevant work
includes work as an ironworker and operations
manager at a retail store.  (TR. 23, 51-52,
138, 143).
The medical evidence of record

6

establishes that the plaintiff has a remote
medical history of L5-S1 discectomy more than
20 years ago. (TR. 184). On March 10, 1999,
he underwent left shoulder arthroscopic
anterior acromioplasty, and by March 18,
1999, he was able to return to light duty
with restrictions. (TR. 168-73, 212). On
August 27, 2002, the plaintiff's orthopedic
surgeon, Dr. Russell J. Striff, noted a
continued excellent result with plaintiff's
left shoulder surgery, with no evidence of
deformity, mass, tenderness, swelling or
crepitus, 5/5 muscle strength and negative
impingement sign. (TR 208).

In April of 2001, the plaintiff told his
family physician, Dr. Tahirul Hoda, that he
was depressed and anxious because his wife
had left him. Dr. Hoda prescribed Paxil and
subsequently referred the plaintiff to
Northern Tier Counseling. (TR. 259). The
plaintiff was seen briefly for medication
management and counseling, but failed to
follow through and did not respond to
letters. He was discharged on November 21,
2001. (TR. 171-83).

Records from Dr. Hoda covering the
period between June of 2001 and April of
2002, show that the plaintiff was treated
with medication for complaints of back pain.
(TR 251-56). On May 22, 2002, Dr. Hoda
ordered an MRI of the lumbar spine which
showed degenerative spondylosis in the lower
lumbar spine and moderate to severe
dehydration with narrowing of the joint space
at L4-L5 and L5-S1. (TR 264). There was no
evidence of focal disc herniation, disc
protrusion, or significant central lumbar
spinal canal stenosis. Id. In June, 2002,
Dr. Hoda referred the claimant to Dr. Han Suk
Koh for neurological consultation. (TR.
184).

On examination of June 20, 2002, Dr. Koh
found discrete mild tenderness on percussion
of the lower back. (TR. 185). There was no
significant limitation in range of motion and
the plaintiff was able to perform tandem
walking. Id. Ankle jerks could not be
elicited and sensory testing, including light

7

touch and vibration, were within normal
limits in both the upper and lower
extremities.  <u>Id</u>.  After reviewing the
earlier MRI, Dr. Koh diagnosed lower back
pain, most likely musculoskeletal, and
suggested a trial of nonsteroidal anti-
inflammatories and a course of physical
therapy.  <u>Id</u>. Dr. Koh did not recommend any
strong pain medication such as Vicodin.  (TR.
186).  The plaintiff refused physical therapy
and voiced concern with anti-inflammatory
medications.  He elected to continue taking
the Vicodin as prescribed by Dr. Hoda. (TR.
248).

On July 23, 2002, the plaintiff
underwent an EMG/NCS of the upper
extremities, which was consistent with
bilateral carpal tunnel syndromes.  (TR. 262-
63).  On September 18, 2002 bilateral carpal
tunnel releases were performed.  (TR. 187-
96).  The plaintiff was noted to have
thrombosed veins in both arms and his left
foot, consistent with intravenous drug abuse
tracks.  (TR. 187).  He was subsequently
admitted to Marworth on September 19, 2002
for medical detoxification.  (TR. 197-204).

On return visit of October 1, 2002, Dr.
Striff reported the surgical wounds to be
healed and bilateral hand range of motion was
to the distal palmar crease from full
extension.  (TR. 205).  There was no thenar
muscle weakness, and Dr. Striff released the
plaintiff to sedentary work with simple
grasping, progressing to unrestricted work
with firm grasping over the following six
weeks.  (TR 206).

On October 29, 2002, the plaintiff
presented to Dr. Hoda's office complaining of
increasing low back and left hip pain after
falling out of a tree while at work.  (TR.
245).  He was given Vicodin and Flexeril and
advised to get an x-ray of the lumbosacral
spine, left hip and left femur.  (TR. 248).

On December 14, 2002, the plaintiff was
found unresponsive at the K-Mart store where
he was employed.  (TR. 223).  He admitted to
"milking" the gel from the duragesic patch,
which he subsequently injected.  <u>Id</u>.  The

8

injection appeared to have a very short
effect, and he was discharged from the
emergency room of Robert Packer Hospital on
the same date.  (TR. 223-24).

On January 5, 2003, the plaintiff
presented to the emergency department of
Memorial Hospital in Towanda with complaints
of leg and back pain.  (TR. 239).  He
indicated that he had a snow removal business
and had been shoveling snow.  Id.  He was
given an injection of Toradol and released.
Id.  On January 20, 2003, Dr. Hoda referred
the plaintiff to Dr. Burdett Porter in the
pain department of the Guthrie Clinic.  (TR.
276-79).  Dr. Porter administered an epidural
injection on January 29, 2003.  (TR. 277).

In February of 2003, the plaintiff came
under the care of a neurosurgeon, Dr. Erik
Gregorie, for his low back pain and left
lower extremity discomfort.  (TR. 322-29).
On examination, Dr. Gregorie reported a
mildly positive straight leg raise in the
left leg only and an absent left ankle
reflex.  (TR. 324).  Lower extremity strength
was 5/5 for hip flexion, knee flexion and
extension, ankle dorsiflexion and plantar
flexion bilaterally and sensation was grossly
within normal limits to soft touch throughout
all dermatomes.  (TR. 327).  Dr. Gregorie
prescribed a Medrol Dosepack, Norco and
Colace, however, the plaintiff's insurance
company denied the prescriptions because the
plaintiff had had three prescriptions written
and filled at various pharmacies over the
previous ten days.  (TR. 326-28).  Dr.
Gregorie ordered another MRI of the lumbar
spine, which demonstrated a left sided
inferior disc extrusion at L4-L5.  (TR. 329).

The plaintiff returned to Northern Tier
Counseling in February of 2003.  He described
considerable conflict in the relationship
with his wife, and indicated that he was
taking Paxil, Wellbutrin and Vicodin.  (TR.
386-401).  On mental status examination of
February 11, 2003, a staff psychiatrist, Dr.
Eugene Pilek, reported that the plaintiff was
oriented as to person, place and time; his
recent and remote memory were impaired.  (TR.

9

398).  His insight and judgment were fair and his intelligence was estimated to be average. Id.  The plaintiff denied any suicidal ideation and Dr. Pilek diagnosed the plaintiff with major depression (non-psychotic) and an adjustment reaction with depressed mood.  Id.  Dr. Pilek recommended that the plaintiff continue taking Wellbutrin and increase his Paxil dosage to 50 mg. (TR. 397-401).

On March 1, 2003 the plaintiff presented to the emergency room of Robert Packer Hospital with a complaint of difficulty urinating.  (TR. 306).  He reported that he had helped a friend rip down a shed the day before and did a fair amount of slinging and lifting, with some increase in his back discomfort.  Id.  His urinalysis was normal and he was advised to continue with his usual medications.  (TR. 306-07).

On March 6, 2003, the plaintiff underwent an L4-L5 lumbar laminotomy, foraminotomy and discectomy.  (TR. 310-11). On return visit of April 7, 2003, he told Dr. Gregorie that he still had some discomfort in his back with decreased range of motion, but did not have the leg pain that he had prior to surgery.  (TR. 322).  On July 29, 2003, Dr. Gregorie completed a form for the welfare department indicating that the plaintiff was temporarily disabled from February 6, 2003 until October 6, 2003, due to diagnosis of status post L4-L5 discectomy with back and right paraspinal pain.  (TR. 342-43).

When the plaintiff returned to Northern Tier Counseling on April 14, 2003, he reported that surgery had helped his back. (TR. 392).  He was continuing to have problems in his relationship with his wife and Dr. Pilek suggested that he discontinue the Wellbutrin and Paxil, and start Effexor. Id.  At the time of his next appointment on May 14, 2003, the plaintiff stated that he had stopped the Effexor on his own and Dr. Pilek prescribed a trial of Lexapro and Vistine.  (TR. 391).  The claimant failed to show for an appointment on June 11, 2003, and on August 21, 2003, Dr. Pilek noted that the

> Lexapro had been helpful in improving the
> plaintiff's mood and anxiety. (TR. 388-90).
>     On October 2, 2003, Dr. Pilek completed
> a Psychiatric Review Technique Form at the
> request of plaintiff's attorney. (TR. 346-
> 59). Dr. Pilek opined that the claimant's
> activities of daily living and concentration
> were moderately restricted, and that the
> plaintiff had marked difficulties in
> maintaing social functioning. Id.

(Doc. 12 at 5-10.)

## IV. Discussion

### A.   STANDARD OF REVIEW

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  A reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions.  Hartranft, 181 F.3d at 360 (citing Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the

11

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").

**B.    PLAINTIFF'S OBJECTIONS**

As noted above, Plaintiff objects to the Magistrate Judge's Report and Recommendation on three grounds: 1) the Magistrate Judge erred in discounting the treating physicians' opinions, (Doc. 13 at 7); 2) the Magistrate Judge did not properly consider Plaintiff's testimony regarding his usual daily activities, (<u>id</u>. at 8); 3) the Magistrate Judge did not properly consider his work history, (<u>id.</u>)

*1.    Evaluation of the Medical Evidence*

Plaintiff argues the Magistrate Judge incorrectly discounted the opinions of his treating physicians.  (Doc. 13 at 8.)

As a general matter, the Third Circuit has repeatedly held that an ALJ must consider all evidence before him, and must explain what evidence he rejects and the reasons why.  <u>Burnett v. Commissioner of Social Security Administration</u>, 220 F.3d 112, 122 (3d Cir. 2000); <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999). An ALJ is required to provide some explanation for the rejection of probative evidence, particularly when that evidence is the opinion of a treating physician or would suggest a disposition contrary to that of the ALJ.  <u>See Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001).  "Although the ALJ need not explicitly weigh every item of medical evidence in the file, he must explain his rejection of

competent evidence supporting the Plaintiff's claims." Berrios-Vasquez v. Massanari, No. Civ. A. 00-CV-2713, 2001 WL 868666, at *6 (E.D. Pa. May 10, 2001) (citing Fargnoli, 247 F.3d at 43).

The "treating physician rule," is codified at 20 C.F.R. 404.1527(d)(2), and is widely accepted in the Third Circuit. Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993); see also Dorf v. Brown, 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating physician's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 C.F.R. § 416.927(d)(2).[3] "A

---

[3] 20 C.F.R. 404.1527(d)(2) states in relevant part:

> Generally, we give more weight to opinions
> from your treating sources, since these
> sources are likely to be the medical
> professionals most able to provide a detailed,
> longitudinal picture of your medical
> impairment(s) and may bring a unique
> perspective to the medical evidence that
> cannot be obtained from the objective medical
> findings alone or from reports of individual
> examinations, such as consultative
> examinations or brief hospitalizations. If we
> find that a treating source's opinion on the
> issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in your case
> record, we will give it controlling weight.
> When we do not give the treating source's
> opinion controlling weight, we apply the

13

cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317 (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988)).  When confronted with contradictory medical evidence, the ALJ may choose whom to credit, but in these instances

---

> factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

Id.  The factors considered when the treating source's opinion is not given controlling weight include the following: 1) the duration of the treating relationship; 2) the nature and extent of the relationship; 3) the supportability of the opinion in light of the relevant medical evidence and reasoning; 4) consistency of proffered reasons with the remainder of the record, 5) expertise of the medical source; and 6) other relevant factors.  20 C.F.R. § 404.1527(d)2-6.

there is an acute need for the ALJ to explain the reasoning behind conclusions.  Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  The Fargnoli court noted that the appeals court will vacate or remand a case where such an explanation is not present.  Id.

After reviewing the record de novo, we concur with the Magistrate Judge that the ALJ's finding regarding Plaintiff's limitations is based on substantial evidence and the ALJ did not err in discounting the opinions of Plaintiff's treating physicians.

First, Plaintiff argues that the ALJ should not have accepted the opinion of consulting psychiatrist Paul L. Orr, M.D., over that of his treating psychiatrist, Eugene Pilek, M.D.  (Doc. 13 at 9.) Plaintiff's argument is based on his assertions that Dr. Orr did not have all of Dr. Pilek's notes at the time he testified, Plaintiff had a long-term treating relationship at Northern Tier Counseling where he saw Dr. Pilek, and the record supports Dr. Pilek's findings.  (Doc. 13 at 9.)

The ALJ recognized that Dr. Orr did not have all of Dr. Pilek's treatment records and concluded that these records did not present evidence that Plaintiff's condition had worsened.  (R. at 23.)  In this situation, the fact that Dr. Orr did not have all of Dr. Pilek's notes did not change the ALJ's authority to rely upon Dr. Orr's opinion.  A review of the records in question reveals that Dr. Pilek at times noted that Plaintiff showed "improved" progress toward goals.  (Ex. 31F, R. at 386-401.)  On one occasion

where Plaintiff's progress was "+/- Worse," Dr. Pilek noted that Plaintiff had discontinued or run out of Lexapro several days before.  (R. at 386.)  In general, the records support the ALJ's conclusion that they do not show a worsening of Plaintiff's depression.

Further, as required, the ALJ stated his reasons for rejecting Dr. Pilek's finding that Plaintiff's mental impairment met or equaled Listing 12.04 for affective disorders.  (R. at 23, 26.)

The ALJ was also justified in finding that the opinion of Plaintiff's neurosurgeon, Dr. Erik Gregoire, did not support a finding of disability.  Dr. Gregoir opined that Plaintiff was disabled from December 2002 through October 2002.  (R. at 320, 343.)  The ALJ gave this finding no weight because it did not establish disability for purposes of SSI evaluation: "[a] temporary incapacity of less than 12 months does not satisfy the regulatory definition . . . ."  (R. at 26.)

Based on our review of the record, we concur with the Magistrate Judge that the ALJ did not err in evaluating the medical evidence and discounting the opinions of Plaintiff's treating physicians.  We also note that we do not address Plaintiff's assertion that he has provided substantial evidence of his disability because this is not the standard of review by which we judge the appropriateness of the ALJ's decision.  (See supra pp.

16

11-12.)

## 2.   *Plaintiff's Usual Daily Activities*

Plaintiff next claims the Magistrate Judge erred "when he failed to consider the testimony of Plaintiff regarding his usual daily activities." (Doc. 13 at 14.)  Basically, this objection faults the ALJ's credibility determinations.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted).  The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered.  20 C.F.R. § 404.1529.  Social Security Ruling 96-7p is particularly relevant to our discussion.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements.  In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p.

Here the ALJ considered the case record, (R. at 24-27), and

17

gave reasons why he did not find Plaintiff's testimony completely credible, (R. at 27).   Plaintiff's specific examples of testimony supporting his credibility and/or undermining the ALJ's determination, (Doc. 13 at 14-15), do not indicate that the ALJ improperly made her credibility finding.   We will address these examples in turn.

First, in connection with the ALJ's notation that Plaintiff was laid off from his job at K-Mart due to a cutback in personnel, Plaintiff points to the fact that he took a leave of absence for three months due to his depression in 2001.   (Doc. 13 at 14.)   A leave of absence taken in the summer and early fall of 2001 does not relate to the disability determination because the leave of absence preceded the alleged onset of disability - March 12, 2002 - the same date Plaintiff stopped working for K-Mart.   (See R. at 49, 77-78, 137-38.)

Plaintiff next contends that the failure of the landscaping business he operated after the alleged onset of disability "should be construed as evidence of an unsuccessful work attempt due to his disabilities."   (Doc. 13 at 14.)   Given the physical nature of landscaping work, (R. at 92-93), and the fact that the ALJ found that Plaintiff's impairments limited him to basically sedentary activity, (R. at 96), Plaintiff's contention is without merit.

Plaintiff asserts his daily activities are more limited than the ALJ credited because he gets help caring for his son from

18

Children and Youth Services, (Doc. 13 at 14 (citing R. at 58)), and he takes frequent breaks when doing work at home, (id. (citing R. at 63)). We conclude that, when viewed in context, Plaintiff's assertions do not undermine the ALJ's credibility finding. In answer to the question "[is] there any agency involved with helping you maintain your son in the home?" Plaintiff responded that he received help from Children and Youth Services, specifically that they wanted him to get into a rehab program, which he did. (R. at 58.) Plaintiff did not testify that he received any regular help with the care of his son. Plaintiff testified that he takes breaks in between doing household chores, (R. at 63), but, when asked by the ALJ if he could perform a hypothetical job, Plaintiff replied "[y]eah, I could I imagine," (R. at 85).[4] Plaintiff elaborated: "If I'm not lifting and I'm doing different things, yeah moving around, I would imagine. Yeah, I mean I can run the vacuum cleaner and I can cook. And I give my six year old a bath and get him dressed and deal with him every morning and every night." (R. at 85-86.) Looking at Plaintiff's testimony in context reveals that the ALJ did not improperly discount evidence Plaintiff now highlights.

---

[4] The ALJ described the hypothetical job as follows: "[a]nd let's assume someone is designing a job where you're not bending over to lift heavy things. You are lifting in accordance with the restrictions that the surgeon gave you in terms of your hands, lifting five pounds pretty much. Maybe once in a while ten, but not very frequently. Could you do a job like that in the right circumstances, the salary being good, and benefits pretty good?"

Similarly, Plaintiff's reliance on his testimony that he had difficulty reading because he has a hard time concentrating must be put in the context of other testimony.  As the ALJ noted, Plaintiff denied any problems with short-term memory, (R. at 27, 65), and testified that he read daily, (R. at 27, 91).  Although Plaintiff correctly points out that his daily reading material is meditational rather that medical, (Doc. 13 at 15), the ALJ's misstatment is not critical.  This is so because the ALJ found Plaintiff's "daily activities, which include reading and driving, indicate that he retains sufficient cognitive functioning and concentration to perform unskilled work that does not require more than low to moderate concentration."  (R. at 27.)  Thus, the ALJ relied on the fact that Plaintiff reads daily, not on the specific reading material.

The review of evidence above demonstrates that the ALJ had sufficient evidence upon which to make her credibility determination.  Therefore, we conclude that Plaintiff's second objection is without merit.

## 3.   *Plaintiff's Work History*

Plaintiff maintains that the Magistrate Judge and ALJ erred in that they should have found him more credible regarding his ability to work because he has a long work history.  (Doc. 13 at 15-18.) Plaintiff cites Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979), for the proposition that "when a Plaintiff has worked for a

long period of time, his testimony about his work capabilities should be accorded substantial credibility." (Doc. 13 at 16-17 (citing <u>Dobrowolsky</u>, 606 F.2d at 410).)

We do not disagree with this proposition.  However, as the Magistrate Judge noted, here the fact that Plaintiff worked for a long period of time does not bolster his credibility regarding his limitations because some of the work which he asserts the ALJ failed to consider was physically demanding (e.g., landscaping and snow removal) and Plaintiff did these jobs after he alleges that he became disabled.  (Doc. 12 at 21.)  Although Plaintiff asserts that he should have been given credit for his unsuccessful work attempts, his interpretation is not the only one possible. Therefore, we cannot say it was error for the ALJ not to assign substantial weight to Plaintiff's credibility based on his work history.

As discussed above, we conclude the ALJ fulfilled her obligation regarding her assessment of Plaintiff's credibility. Therefore, we find Plaintiff's final objection without merit.

### V. Conclusion

For the reasons discussed, we do not find merit in Plaintiff's objections.  Therefore, we adopt the Magistrate Judge's Report and Recommendation and deny Plaintiff's appeal of the Commissioner's decision.  An appropriate Order follows.

S/Richard P. Conaboy
United States District Judge

DATED: July 11, 2005

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID A. TERKAY,                        :
                                        :
        Plaintiff,                      :CIVIL ACTION NO. 3:04-CV-1023
                                        :
            v.                          :(JUDGE CONABOY)
                                        :(Magistrate Judge Mannion)
JO ANNE B. BARNHART,                    :
Commissioner of Social                  :
Security,                               :
                                        :
        Defendant.                      :
_____

**ORDER**

AND NOW, THIS 11th DAY OF JULY 2005, FOR THE REASONS SET FORTH

IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.  The Magistrate Judge's Report and Recommendation, (Doc.

    12), is ADOPTED;

2.  Plaintiff's appeal of the Commissioner's decision, (Doc.

    1), is DENIED;

3.  The Clerk of Court is directed to close this case.

                        S/Richard P. Conaboy
                        RICHARD P. CONABOY
                        United States District Judge